1  Robert Tauler  (SBN 241964)
   robert@taulersmith.com
2  Narain Kumar, Esq. (SBN 301533)
   nkumar@taulersmith.com
3  TAULER SMITH LLP
   626 Wilshire Boulevard, Suite 550
   Los Angeles, California 90017
4  Tel: (213) 927-9270

5  *Attorneys for Plaintiff*
   *Robert Conohan*

6

7

8           **UNITED STATES DISTRICT COURT**

            **CENTRAL DISTRICT OF CALIFORNIA**

9

10 | ROBERT CONOHAN, individually | Case No.: 2:25-cv-00106-PVC
   | and on behalf of all others similarly |
   | situated, |
11 |

12 |           Plaintiff,              | **PLAINTIFF ROBERT CONOHAN'S**
   |        vs.                        | **OPPOSITION TO DEFENDANT**
13 |                                   | **RAD POWER BIKES, INC.'S**
   | RAD POWER BIKES, INC., a          | **MOTION TO DISMISS**
   | Washington corporation; and DOES 1 | **COMPLAINT; MEMORANDUM OF**
14 | through 25, inclusive,            | **POINTS AND AUTHORITIES**

15 |                                   | <u>Hearing</u>
   |           Defendants.             | Date: April 8, 2025
16 |                                   | Time: 10:00 am
   |                                   | Courtroom: 590

17

18

19

20

21

1

## <u>**TABLE OF CONTENTS**</u>

2

TABLE OF AUTHORITIES ...................................................................ii

3

MEMORANDUM OF POINTS AND AUTHORITIES ...................................1

4

I. INTRODUCTION ......................................................................1

5

II. RELEVANT FACTUAL BACKGROUND ........................................4

6

III. LEGAL STANDARD ................................................................6

7

IV. ARGUMENT ..........................................................................8

8

   A. Plaintiff Has Article III Standing And Statutory Standing Under CIPA .................7

9

     1. Defendant Violated Plaintiff's Right Of Privacy – A Constitutionally Recognized Injury ...................................................................8

10

     2. Defendant's Article III Standing Arguments Ignore The Allegations In The FAC. ...........................................................................13

11

   B. The Court Has Specific Personal Jurisdiction Over Defendant. ...........................15

12

     1. Specific Jurisdiction is Established Here Under Paccar and Freestream – Cases Involving Commission of a Tort in California...........................................18

13

     2.The § 638.51 Claim "Arises from or Relates to" Defendant's Forum-Related Activities, Prong 2 of the Herbal Brands Test. ...........................................20

14

15

     3. Plaintiff Meets the Test's First Prong – Purposeful Availment/Purposeful Direction ...........................................................................20

16

     4. Exercising Personal Jurisdiction Here Would Be Reasonable...........................23

17

     5. The Court May Wish to Defer Its Ruling on Jurisdiction Until the Ninth Circuit Issues its En Banc Decision in Briskin v. Shopify, Inc...........................................13

18

19

   C. Plaintiff States a Claim That Defendant Violated CIPA. ...........................24

20

21

1. CIPA's Prohibition On Trap And Trace Devices Applies To The TikTok Software and Internet Communications ................................................ 24

2. Defendant's Additional Statutory Arguments Lack Legal Basis. ....................... 27

3... Defendant's Parade of Horribles Are Simply Wild Conjecture With No Basis In The Allegations In The Complaint ........................................................ 30

V. CONCLUSION ........................................................................................ 32

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE ........................................... 33

# TABLE OF AUTHORITIES

Cases                                                                                                      Page(s)

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................8

*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1988) ....................................................................7

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ...................................................................20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................7, 8

*Brainerd v. Governors of the Univ. of Alberta*,
   873 F.2d 1257 (9th Cir. 1989) .................................................................22

*Briskin v. Shopify, Inc.*,
   101 F.4th 706 (May 14, 2024) .................................................................24

*Calder v. Jones*,
   465 U.S. 783 (1985) .................................................................................21

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
   824 F.3d 1156 (9th Cir. 2016) ...................................................................7

*Carroll v. The J.M. Smucker Company*,
   2023 WL 4053796 (N.D. Cal. Jun. 15, 2023) ....................................18, 19

*Chien v. Bumble Inc.*,
   641 F. Supp. 3d 913 (S.D. Cal. 2022) .....................................................17

*Conley v. Gibson*,
   355 U.S. 41 (1957) .....................................................................................7

*Daghaly v. Bloomingdales.com*, LLC,
   2024 WL 5134350 (9th Cir. Dec. 17, 2024) ............................................24

*D'Angelo v. Penny OpCo, LLC*,
   2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ...........................................14

*Dole Food Co. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) .................................................................21

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*,
   23 F.4th 1195 (9th Cir. 2022) ....................................................................8

*Fiore v. Walden*,
   688 F.3d 558 (9th Cir. 2012) .....................................................................7

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
   905 F.3d 597 (9th Cir. 2018) .......................................................18, 19, 21

*Greenley*,
   684 F. Supp. 3d ......................................................................................26

*Hasson v. FullStory, Inc.*,
   114 F.4th 181 (3d Cir. 2024) ...................................................................18

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
   72 F.4th 1085 (9th Cir. 2023) ................................................... 15, 20, 23

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ........................................................... 11

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   934 F.3d 316 (3rd Cir. 2019) .......................................................... 13

*Jarman v. HCR ManorCare, Inc.*,
   10 Cal.5th 375 (2020) .................................................................... 27

*Lesh*, 2025 WL 563358 ..................................................................... 15

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
   22 F. 4th 852 (9th Cir. 1977) ............................................................ 7

*Lopez v. Sony Elecs., Inc.*,
   5 Cal. 5th 627 (2018) ..................................................................... 29

*Lungren v. Deukmejian*,
   45 Cal. 3d 727 (1988) .................................................................... 26

*Mikulsky v. Noom*,
   682 F.Supp.3d 855 (S.D. Cal. 2023) .................................................. 18

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
   2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ............................... 2, 15, 26

*Moody v. C2 Educ. Sys. Inc.*,
   2024 WL 3561367 (C.D. Cal. July 25, 2024) ................................... 2, 11

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
   757 F.2d 1058 (9th Cir. 1985) ......................................................... 18

*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019) ......................................................... 11

*People of State of Cal. v. F.C.C.*,
   75 F.3d 1350 (9th Cir. 1996) ............................................................ 3

*Rio Properties, Inc. v. Rio Intern. Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ......................................................... 20

*Rodriguez v. Aquatic Sales Solutions LLC*,
   735 F. Supp. 3d 1208 (C.D. Cal. May 29, 2024) .................................. 22

*Rodriguez*,
   2025 WL 65409 .............................................................................. 2

*Rosenthal v. Bloomingdales.com, LLC*,
   101 F.4th 90 (1st Cir. 2024) ........................................................... 18

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .......................................................... 21

*Shah v. Fandom, Inc.*,
   2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .............................. 2, 14, 26

*Swarts v. Home Depot, Inc.*,
   689 F. Supp. 3d 732 (N.D. Cal. 2023) ........................................... 17, 22

iv

*TikTok Inc. v. Garland*,
    122 F.4th 930 (D.C. Cir. 2024) ..................................................................13

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
    472 F. Supp. 3d 649 (N.D. Cal. 2020) ......................................................17

*Yamashita v. LG Chem, Ltd.*,
    62 F.4th 496 (9th Cir. 2023) .......................................................................7

*Zamani v. Carnes*,
    491 F.3d 990 (9th Cir. 2007) ....................................................................23

Statutes

15 U.S.C. § 9901 .............................................................................................13
Cal. Civ. Code § 1798.175 .............................................................................29
Cal. Penal Code § 638.50(c) ...........................................................25, 26, 27
Cal. Penal Code § 638.51 .............................................................1, 2, 24, 25
Pub. L. No. 118-50 ..........................................................................................13

PTF'S OPPOSITION TO MOTION TO DISMISS          2:25-cv-00106-PVC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Rad Power Bikes, Inc., ("RPB") seeks dismissal of Plaintiff's claim that it worked with TikTok to install software ("TikTok Software") that invaded the privacy of otherwise anonymous website visitors like Plaintiff in a manner prohibited by the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51, which defines and prohibits such Trap and Trace devices. Defendant now argues that would be fundamentally unfair and violate due process to hold Defendant accountable in a California court and that Section 638.51 is strictly limited to telephone lines. Defendant is wrong on both counts. There is nothing remotely unfair about holding it accountable in California courts for violating the privacy of people in California when Defendant obtained the TikTok Software from a California-headquartered company, then used the TikTok Software to send electronic instructions into California to devices that accessed its Website, and then finally, violation of California law, extracted data from those devices in California and sent it back to the California-headquartered company so it could be de-anonymized. In addition, virtually every court that has examined Defendant's statutory arguments have concluded they lack merit and that Section 638.51's prohibition on trap and trace ("Trap and Trace") devices applies to internet communications.

Defendant collects data on unsuspecting visitors to its website using sophisticated technology so that it can identify and track Californians with the assistance of TikTok. Defendant, like other defendants before it, seek the Court's assistance to bail them out of

their privacy collection practices that are illegal in this state. *E.g.*, *Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367, at *4 (C.D. Cal. July 25, 2024) (concluding that defendant could be held liable for violating California's prohibition on trap and trace devices over the internet) ("*C2*"); *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *1 (N.D. Cal. Oct. 21, 2024) (same); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (same). However, virtually every court who has assessed the TikTok Software at the pleading stage has come to the same conclusion – that the TikTok Software fits within the definition of an illegal "Trap and Trace" device under California Penal Code Section 638.51 because of the way it is designed to collect information from Californians without their consent. As Judge Klausner explained in *C2*, "Defendant argues that § 638.52 indicates that a pen register or trap and trace device must be a physical device attached to a telephone line. . . . The Court disagrees." 2024 WL 3561367, at *2; *see also Rodriguez v. Autotrader.com*, Inc., 2:24-cv-08735-RGK-JC, ECF No. 25 (C.D. Cal. January 8, 2024) (same).

Defendant instead chooses to make multiple incorrect factual representations about Plaintiff's allegations or engage in wild and unsupported speculation about the technology involved. Defendant for example goes on unrelated tangents about what a ruling for Plaintiff would mean for **caller ID systems**. Mot. at 4, 9 n.23, 10, 22. But nothing in Plaintiff's FAC involves caller ID and courts have concluded that caller ID systems are not analogous to Trap and Trace devices on websites. *Rodriguez*, No. 2:24-CV-08735-

RGK-JC, 2025 WL 65409, at *6 ("Unlike a caller ID system, which is installed on the call recipient's device, the Website installs the tracking software on the visitor's browser. The software then remains on the visitor's browser unless the visitor decides to delete it."). Defendant's argument relies on a myriad of facts absent from the complaint which can only be addressed on summary judgment, Fed. R. Civ. P. 12(d), and fails to show any actual absurdity, because there would be nothing absurd about a law banning caller ID services, merely surprising. And Defendant made no attempt to even begin the complex task of analyzing any of the numerous other regulations and statutes at both the state and federal level involved in caller ID systems, let alone cellular technology. *E.g.*, *People of State of Cal. v. F.C.C.*, 75 F.3d 1350, 1358 (9th Cir. 1996) (upholding FCC's order preempting California Public Utility Commission's rules for caller ID services).

Defendant ultimately argues that the federal courts cannot hold Defendant accountable for its conduct because the injuries it caused by invading Plaintiff's privacy with an illegal trap and trace device are simply not cognizable under Article III. Similarly, the State of California cannot hold Defendant accountable in its courts for violating California law because Defendant was "in another state" when it used the internet to intentionally and knowingly violate invade the privacy of Plaintiff and potentially millions of other people in California. Fortunately, Defendant is not above the law. Privacy-based injuries like those alleged in the FAC have long been cognizable under Article III, and there are no extraterritoriality concerns with holding Defendant accountable under

1  California law for communicating with and violating the privacy of people within

2  California.

3  **II.    RELEVANT FACTUAL BACKGROUND**

4      Defendant is a retailer that sells power bicycles and bicycle accessories through its

5  website www.radpowerbikes.com (the "Website"). Compl., ¶ 5. Four of Defendant's

6  retail locations are located in California. Decl. of J. Evan Shapiro in support of Plaintiff's

7  Oppo. to the Mot. to Dismiss ("Shapiro Declaration" or "Shapiro Decl.") ¶¶ 18-19; Shapiro

8  Decl. Ex. I (webpage from the Website with header "RadRetail Locations"). Defendant

9  contracted with TikTok to embed advertising related software created by TikTok (the

10 "TikTok Software") into the Website. Compl., ¶ 9; Shapiro Decl., ¶¶ 14-16; Shapiro Decl.

11 Exh. H (TikTok Advertising Services "Terms of Service").

12     Plaintiff visited the Website on March 4, 2025 while in California. See Decl. of

13 Robert Conahan in support of Plaintiff's Oppo. to the Mot. to Dismiss, ¶ 2.  Plaintiff did

14 not take any action to consent to being identified by the Website or to have any information

15 on the device he used to visit the Website, or the browser he used, be transmitted to TikTok

16 for identification or marketing purposes. Id. ¶ 3; Compl., ¶¶ 19, 21.

17     As deployed on the Website, the TikTok serves as a de-anonymization process that

18 identifies visitors for the marketing and surveillance purposes (and benefit) of Defendant

19 and TikTok. Id., ¶¶ 9, 10-15. With the TikTok Software, the Website "gathers device and

20 browser information, geographic information, referral tracking, and url tracking [from a

21 Website visitor] by running code or 'scripts.'" Id., ¶ 11; Shapiro Decl., Ex. A (TikTok

4

1   webpage, "About TikTok Pixel") ("The [TikTok Software] collects information available

2   via standard web browsers, like Chrome" including the "User Agent," which is "used to

3   determine the device make, model, operating system and browser information" of a visitor;

4   and "Timestamp" which is "used to determine when website actions took place, like when

5   a page was viewed or when a product was purchased" by a visitor).

6       This collection of data happens as soon as a visitor, such as Plaintiff, lands on the

7   Website's homepage – before he or she has the opportunity to consent to the Website's

8   alleged trap and trace device. Compl., ¶¶ 12; Shapiro Decl. ¶¶ 2-5 (duplicating screenshots

9   appearing in the Complaint at 3:17-28 and 4:7-20, which demonstrate the operation of the

10  TikTok Software to collect visitor data and transmit it to TikTok). The data from a visitor's

11  browser on his or her device by the TikTok Software on the Website is transmitted to

12  TikTok for the purpose of matching it with existing data TikTok has about the visitor.

13  Compl., ¶¶ 10, 13; Shapiro Decl. ¶ 2; Shapiro Decl. Ex. D (TikTok webpage) ("Advanced

14  Matching is a feature that helps you match customer information such as email and phone

15  number along with actions people take on your website.") TikTok can compare the visitor

16  data sent from the Website with a massive database concerning hundreds of millions of

17  Americans, for the purpose of "fingerprinting" or identifying a visitor. Compl., ¶ 10;

18  Shapiro Decl. Ex. D. The "Auto Advanced Matching" feature allows Defendant to send

19  information typed by Website visitors into fields on the pages of the Website. Compl., ¶¶

20  17, 31; Shapiro Decl. Ex. F (TikTok webpage, "How to Set up Auto Advanced Matching")

21  ("[w]hen a visitor lands on your website and inputs customer information during

5

1    registration, sign-in, contact or checkout on a website where you installed [the TikTok

2    Software], Automatic Advanced Matching will capture information from those fields…");

3    Ex. D (TikTok webpage "About Advanced Matching"); Ex. E (TikTok webpage "Best

4    Practices for Advanced Matching").

5         TikTok also has its US headquarters in Culver City, California. *See* Shapiro Decl.

6    ¶¶ 12-13; Shapiro Decl. Ex. G (TikTok press release, "Growing our presence in Los

7    Angeles"). Defendant contracted with TikTok to obtain its advertising services, including

8    use of the TikTok Software on the Website. See Shapiro Decl. ¶¶ 14-16; Shapiro Decl. Ex.

9    H. The contract provides that California law governs it, and any disputes under it. See

10   Shapiro Decl. ¶ 17; Shapiro Decl. Ex. H, at 21. The contract further sets as the "Exclusive

11   Venue[s]" for claims arising out of the contract as (1) "the U.S. District Court for the

12   Central District of California" or (2) "the Superior Court of the State of California, County

13   of Los Angeles."  As the contract explains, this means that a website operator such as

14   Defendant, "submit[s] to the personal jurisdiction of either of these courts for the purpose

15   of litigating any such claim."  *Id.*

16   **III.    LEGAL STANDARD**

17        **A.    <u>Legal Standard for A Motion to Dismiss Under Rule 12(b)(2)</u>**

18        "On a motion to dismiss for lack of personal jurisdiction, the court 'take[s] as true

19   all uncontroverted allegations in the complaint.'" *First Capitol Consulting, Inc. v. NetTax,*

20   *LLC*, No. 2:23-cv-07837-MRA-AGR, 2025 U.S. Dist. LEXIS 27438, at *2 n.1 (C.D. Cal.

21   Feb. 14, 2025) (quoting *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F. 4th 852, 858 (9th

Cir. 1977)). Where a defendant's Rule 12(b)(2) motion to dismiss "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (citation and internal quotation marks omitted). This showing may include reasonable inferences made from a complaint's material factual allegations in the plaintiff's favor. *See, e.g., Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012) ("We will draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility.").

### B.   Legal Standard for A Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "It is axiomatic that

7

the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas*

*Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted).

## IV.    ARGUMENT

### A.    <u>Failure to Comply with Central District Local Rule 7-3</u>

Defendant failed to comply with the requirements of Local Rule 7-3 and the parties

never had a pre-filing conference to discuss the substance of Defendant's Motion.

Defendant's Notice of Motion states:

> This motion is made following written correspondence sent on
> June 24, 2024, by Defendant's counsel, which outlined
> thoroughly the substance of the present Motion. Plaintiff
> disagreed with Defendant's grounds for dismissal, and therefore,
> further discussions on the issues outlined in the present Motion
> would not have been fruitful. Accordingly, the parties have
> satisfied L.R. 7-3.

Def's Not. of Mot. at 2. Defendant must be referring to written correspondence that took

place related to a demand letter which occurred back in June 2024. It's unclear how

Defendant's written correspondence could have "outlined thoroughly the substance of the

present Motion" when no complaint would even be filed for another roughly seven months,

on January 6, 2025. Dkt. 1. Defendant is in direct violation with the Court's requirements

in its Case Management Order for Local Rule 7-3 conferences:

1. **"Meet and Confer" Requirements**. Local Rule 7-3 requires counsel to conduct a prefiling conference "to discuss thoroughly … the substance of the contemplated motion and any potential resolution."

a. <u>Scope</u>. This requirement applies in all cases, including those with pro per litigants, and extends to all issues. If the parties are unable to fully resolve the dispute, they shall attempt to narrow the scope of the contested issue(s). **Parties must meet and confer either by videoconference or in person. Email correspondence is insufficient; and motions not supported by a statement that counsel met by videoconference or in person <u>will be summarily denied</u>.**

b. <u>Compliance</u>. The moving party must include in the signed notice of motion a truthful representation of full compliance with Local Rule 7-3, stating that the parties "thoroughly discussed the substance and potential resolution of the filed motion [by videoconference or in person]."

c. <u>Sanctions</u>. If an opposing party refuses to participate in good faith, the moving party shall explain the refusal in detail. Failure by any party to comply in good faith with the "meet and confer" requirement shall result in an order to show cause re: sanctions—

including, as appropriate, striking or denying the motion,
deeming the motion unopposed, and/or awarding monetary
sanctions.

Case Management Order at 7-8. Dkt. 13 (emphasis added). Defendant also never sought to comply with Local Rule 7-3 even though it reached out to Plaintiff's counsel to discuss a stipulation regarding the word limit for this Motion which the Court ultimately approved. Dkt. 7. Defendant is also clearly quite aware that violated Local Rule 7-3 given the language quoted above it used to try to feign compliance. Perhaps some issues could have been addressed if Defendant had been more interested in trying to meet and confer in good faith instead of making wild and irrelevant claims about Plaintiff's counsel and how a ruling for Plaintiff will practically send us back to the stone age.

**B.    Plaintiff Has Article III Standing And Statutory Standing Under CIPA**

**1.    Defendant Violated Plaintiff's Right Of Privacy – A Constitutionally Recognized Injury.**

Plaintiff suffered a constitutionally cognizable injury when Defendant violated his right to privacy. After reviewing allegations substantially similar to those in the FAC, *C2 Educational Systems* explained:

there is no credible dispute that Plaintiff has alleged an injury necessary for both § 637.2 and standing. Plaintiff alleges: (1) Defendant operates its TikTok Software on its Website; (2) the TikTok Software collects data from every visitor of the Website; and (3) Plaintiff visited the Website after the TikTok Software was installed. These allegations demonstrate that Defendant, through the use of the TikTok Software, collected Plaintiff's

10

information, thereby constituting an invasion of privacy. And invasions of privacy are actionable injuries.

2024 WL 3561367, at *2-*6 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook*")).

Indeed, violations of someone's right to privacy fall into the category of traditionally recognized harms that constitute an Article III injury in fact. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). "A right to privacy 'encompass[es] the individuals' control of information concerning his or her person.'" *In re Facebook*, 956 F.3d at 598-99. There, Facebook "continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history." *Id.* at 599. The Ninth Circuit concluded that such an "unauthorized exploration" of someone's private life and information behind their back constitutes a cognizable Article III injury. *Id.* at 599.

## 2. **Defendant's Article III Standing Arguments Ignore The Allegations In The FAC**

The allegations of the FAC more than adequately describe the relevant facts and how Defendant violated Plaintiff's privacy in a constitutionally cognizable way. The Motion spends considerable space faulting Plaintiff for not alleging things that are plainly alleged in the FAC, Defendant simply chose to ignore them.  Defendant criticizes Plaintiff for "generic" and "hypothetical allegations that do not include facts or harms from his visit to Defendant's website regarding things like "what information those electronic impulses

11

allegedly contained, nor that any such information was likely to identify Plaintiff." Mot. at 7. But the FAC alleges is that "the TikTok Software gathers data including device and browser information, geographic information, referral and url tracking." FAC ¶ 11. And this begins from the very first moment that Plaintiff or anyone else arrives on the Website and continues whenever someone clicks on a new page on the Website. *Id.* ¶¶ 9-12, 15. The FAC also alleges Defendant went far beyond merely collecting basic technical information. Defendant used the information collected to fingerprint the data and deanonymize Plaintiff by matching it "with existing data TikTok has acquired and accumulated about hundreds of millions of Americans," including Plaintiff, presumably because Defendant found more profit in invading Plaintiff's privacy than playing by the rules. *Id.* ¶¶ 10, 24, 32. Moreover, people like Plaintiff had no idea any of their data was potentially being sent to a foreign government. *Id.* ¶ 27.

Indeed, this exact same concern was raised during oral arguments in the Supreme Court. "Just on the data collection, that seems like a huge concern for the future of the country," said Justice Brett Kavanaugh. He suggested that TikTok's vast trove of information on Americans could be used "to develop spies, to turn people, to blackmail people, people who a generation from now will be working in the FBI or the CIA or in the State Department." Transcript of Oral Argument, *TikTok, Inc. v. Garland* (24-656). Oyez. Retrieved at https://www.oyez.org/cases/2024/24-656. It is difficult to see how the injury Defendant caused is too intangible for Article III when Supreme Court Justices discuss it during oral arguments and Congress actually passes a law addressing those concerns and

TikTok's privacy violations. *See* Protecting Americans from Foreign Adversary Controlled Applications Act, Pub. L. No. 118-50, div. H (2024), codified as 15 U.S.C. § 9901; *see generally TikTok Inc. v. Garland*, 122 F.4th 930, 939 (D.C. Cir. 2024) (subsequent history omitted). To be clear, Plaintiff's point is much simpler – it is that Defendant cannot simply denigrate Plaintiff, invalidate his actual experiences which are corroborated by multiple sources (making them far more than merely "plausible") and act as if the concerns and injuries alleged in the FAC are an ephemeral and trifling "hypothetical" when Congress and the Supreme Court are treating those same risks and injuries as very real and very tangible. It should be more than enough at this stage that Defendant makes no meaningful arguments on Article III standing regarding the FAC's central allegations about the scope of information collected about Plaintiff and millions more that has been used for fingerprinting, de-anonymization, or even potential collaboration with a foreign government. FAC ¶¶ 10, 17, 19, 21, 25.

The instant action is remarkably similar to the allegations the Ninth Circuit found sufficient *In re Facebook*, where it also noted it would be simply "untenable" to think that "federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data." *In re Facebook*. (quoting *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019)). And yet the inescapable conclusion of Defendant's Article III standing arguments is that federal courts are constitutionally powerless to enforce privacy laws, even for a physical trap and trace device attached to a phone line like the kind Defendant argues Congress and the California

1   Legislature intended to outlaw, despite the plain language of the statutes. This is because

2   Plaintiff has apparently not alleged a "real" harm when he alleged his device, browser, and

3   geographic information were tracked across multiple webpages, without his knowledge or

4   consent, all so that people he does not know and has never met can use that data to build a

5   profile that will allow them to identify everywhere else he  visits even when he thinks he

6   is anonymously browsing the internet. *E.g.*, FAC ¶¶ 14, 19, 21. To many this will sound

7   far more invasive, harmful, and dangerous than someone using a trap and trace device

8   attached to a traditional telephone land line which can only give someone a simply list of

9   the phone numbers that were dialed. Defendant thinks none of these constitute injuries real

10  or valid enough to be heard in federal court, but thankfully Defendant and social media

11  companies are not the ones deciding if the conduct and injuries to Plaintiff and countless

12  others alleged in the FAC are real injury enough to be heard in federal court. Moreover,

13  multiple courts have concluded that based on binding Ninth Circuit precedent a violation

14  of CIPA creates a substantive right a violation of which is sufficient for Article III standing.

15  *D'Angelo v. Penny OpCo, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL 7006793, at *3

16  (S.D. Cal. Oct. 24, 2023).

17       It is also clear that these allegations are similarly sufficient to constitute an injury

18  for purpose of establishing Plaintiff's statutory standing under Section 637.2. *See Shah*,

19  2024 WL 4539577, at *5 (concluding plaintiffs had sufficiently alleged statutory standing

20  because "Plaintiffs have plausibly alleged that they were injured by being tracked across

21  multiple visits for marketing and advertising purposes, and that they did not expect or agree

14

1  to such tracking."); *see also Mirmalek*, 2024 WL 5102709, at *4 (same); *Lesh*, No. 24 CIV.

2  03132 (VM), 2025 WL 563358, at *3 (concluding that statutory standing was established

3  because "Lesh alleges that CNN installed Trackers, owned by third-party entities, which

4  then received her IP address for purposes of advertisement placement.").

5

6  ## C.    The Court Has Specific Personal Jurisdiction Over Defendant.

7  The Ninth Circuit applies a 3-part "minimum contacts" test for specific personal

8  jurisdiction over a non-resident defendant, such as RPB: "(1) the non-resident defendant

9  must purposefully direct [its] activities or consummate some transaction with the forum

10  or resident thereof; or perform some act by which [it] purposefully avails himself of the

11  privilege of conducting activities in the forum, thereby invoking the benefits and

12  protections of its laws; (2) the claim must be one which arises out of or relates to the

13  defendant's forum-related activities; and (3) the exercise of jurisdiction must comport

14  with fair play and substantial justice, i.e. it must be reasonable. *See, e.g., Herbal Brands,*

15  *Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023).  The allegations of the

16  Complaint and the additional evidence introduced in opposition to RPB's FRCP 12(b)(2)

17  motion, readily meet this test and establish a *prima facie* showing of jurisdictional facts.

18  The central alleged facts for purposes of specific personal jurisdiction are these:

19  • Plaintiff was in California when he visited the Website on March 4, 2025.  Conahan

20     Decl., ¶ 2.

21

- RPB contracted with TikTok, a company headquartered in Culver City, California, to obtain the TikTok Software that, as deployed on the Website, constitutes the trap and trace device underlying this action. Compl., ¶¶ 9; Shapiro Decl., ¶¶ 14-16; Shapiro Decl. Exs. G and H.

- TikTok's Terms of Service create continuing contractual obligations between TikTok and RPB, because RPB is still using the TikTok Software on the Website as of today. Shapiro Decl. ¶¶ 2-5, 15; Shapiro Decl. Ex. H, at 2.

- Under the terms of the TikTok/RPB contract, (1) California law governs the contract and any disputes under it; and (2) RPB submits to jurisdiction for purposes of such disputes in either this Court (U.S. District Court for C.D. Cal.) or Los Angeles Superior Court. Shapiro Decl. ¶ 17; Shapiro Decl. Ex. H, at 21.

- RPB engages with persons in California, through its website (the "Website"), on which such persons can purchase products. Compl., ¶¶ 2, 8.

- Four (4) of RPB's nine (9) retail locations are located in California. Shapiro Decl., ¶¶ 18-19; Ex. I.

- Through a "fingerprinting process" RPB and TikTok identified Plaintiff, and collected data on him. The process involves PRB "***send[ing] communications to TikTok*** whenever a user lands on the Website and any time a user clicks on a page." Complaint ¶¶ 10-15; Shapiro Decl. Exs. A-F.

    These facts are sufficient for this Court to exercise personal jurisdiction over RPB.

First, California courts have concluded that for purposes of determining specific

personal jurisdiction, the collection of data at least partially takes place where that data is

stored. *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 929 (S.D. Cal. 2022) (minimum

contacts established when defendant, among other things, "collected personal and

location information for the purpose of sending targeted 'marketing information,

promotions, and advertisements."); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 742

(N.D. Cal. 2023) (concluding minimum contacts were sufficiently alleged for a violation

of CIPA based on the company's chatbox on its website).

Second, upon receiving the impulses from Plaintiff's device, the "Website

instantly sends communications to TikTok" in California, where TikTok presumably has

some data infrastructure (Compl., ¶ 15); there, what the Website sends is "match[ed ]

with existing data TikTok has acquired" (*id.*, ¶ 10). *See WhatsApp Inc. v. NSO Grp.

Techs. Ltd.*, 472 F. Supp. 3d 649, 673 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th

930 (9th Cir. 2021) ("By sending the malicious code, ***defendants electronically entered

the forum state seeking out plaintiffs' servers***, which were a necessary component to

transmit the malicious code to the users.").

These central facts distinguish this case from those cited by Plaintiff.  For example,

in *Massie v. GM Co.*, No. 1:20-cv-01560-JLT, 2021 U.S. Dist. LEXIS 99945, at *11-13

(E.D. Cal. May 25, 2021), the court determined that General Motors' installation on its

website of software allowing ***a non-California company*** to capture personal data and

actions was insufficiently tied to California to support the exercise of specific jurisdiction

over GM. In *Carroll v. The J.M. Smucker Company*, No. 3:22-cv-08952-WHA, 2023 WL 4053796, *5 (N.D. Cal. Jun. 15, 2023), in which the court found no basis for personal jurisdiction over the defendant, the court had not been presented with evidence that the defendant had any relations at all with the third party whose software it used to violate the federal Video Privacy Protection Act. Defendants' reliance on other decisions is similarly unavailing because they involve no facts analogous to the facts here concerning the RPB/TikTok contract and its terms – which related directly to Plaintiff's § 638.51 claim. *See, e.g., Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 96-99 (1st Cir. 2024); *Mikulsky v. Noom*, 682 F.Supp.3d 855, 867–68 (S.D. Cal. 2023); *Hasson v. FullStory, Inc.*, 114 F.4th 181, 190-95 (3d Cir. 2024).

1. **Specific Jurisdiction is Established Here Under *Paccar* and *Freestream* – Cases Involving Commission of a Tort in California.**

The Complaint's allegations that RPB violated § 638.51 through acts in California are sufficient to satisfy the minimum contacts requirement for the exercise of personal jurisdiction. *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985) ("The commission of an intentional tort in a state is a purposeful act that ***will satisfy the first two requirements [of the minimum contacts test].***"); *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 606 (9th Cir. 2018) ("*Freestream*") ("well-settled understanding that the commission of a tort within the forum state usually supports the exercise of personal jurisdiction.") This means that "*Paccar*, not *Calder*, is the proper starting place." *Freestream*, 905 F.3d at 606. There is thus no need for the Court

18

1  to even address RPB's argument based on the 'second requirement' of the "minimum

2  contacts" test – that it did not purposefully direct its activities at California. *See* Mot., at

3  15:9-19:5. Further, the facts identified above plainly establish a *prima facie* showing that

4  the exercise of specific jurisdiction over RPB is "reasonable."

5      *Fudge v. Delta Air Lines, Inc.*, No. 2:24-CV-04531 HDV SSC, 2024 U.S. Dist.

6  LEXIS 185143, at *3, *7 (C.D. Cal. Oct. 4, 2024), is instructive given the facts at bar here.

7  There, plaintiffs sued Delta over its installation of "the Facebook Tracking Pixel on its

8  website." The complaint against Delta alleged that (1) Plaintiffs used their devices to

9  access the Delta website in California, and (2) the Pixel "records and disseminates

10 Plaintiffs' [ ] data, communications, and personal information in California" and shares

11 these with Facebook. *Id.* at *3-*4, *7. The Court found that these assertions sufficiently

12 alleged that "a substantial part of the events giving rise to Plaintiffs' claims occurred in

13 [California]." *Id.*, at *7. The complaint also alleged that "Delta regularly conducts business

14 in California." *Id.* The Court concluded that these allegations taken together "make a

15 sufficient *prima facie* showing to meet the specific jurisdiction requirements for both of

16 their claims." *Id.*, at *8. Similarly, here Plaintiff alleges RPB captured "data,

17 communications and personal information" from his device in California, and RPB does

18 regularly conducts business in the state. Moreover, the marketing surveillance conducted

19 by RPB and TikTok jointly that this action challenges serves the purpose of increasing

20 sales to California residents.

21

19

**2.**     **The § 638.51 Claim "Arises from or Relates to" Defendant's Forum-Related Activities, Prong 2 of the *Herbal Brands Test*.**

The second prong of the Ninth Circuit's minimum contacts for specific personal jurisdiction "requires that a plaintiff's claim arise out of or relate to the defendant's contacts with the forum." *Herbal Brands,* 72 F.4th at 1096.  Here, the prong is easily met. First, Plaintiff would not have suffered the loss he has alleged here – the invasion of his privacy – ***had not RPB forwarded the impulses (and information therein) to TikTok in California***. This meets the "but for" test used in such cases as *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) ("The question, therefore, is this: but for [Defendants'] contacts with . . . California, would [Plaintiff's] claims against [Defendant] have arisen?"); *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002). Second, Plaintiff would not have sustained his injury had the Website not been available to him in California.

**3.**     **Plaintiff Meets the Test's First Prong – Purposeful Availment/Purposeful Direction**

The jurisdictional facts set out above demonstrate that RPB ***purposely availed*** itself of the benefits from conducting activities in California ***or purposely directed*** its conduct at the state.

The fact that RPB entered into an agreement with TikTok shows that RPB knew the TikTok Software would collect Website visitors' data, and that RPB knowingly allowed such information to be collected, commodified and monetized from California residents.

In this manner, Defendant derived benefits from the following California conduct: (1) contracting with TikTok in California, (2) from collecting personal data from California residents; and (3) transmitting that data to TikTok in California. Thus, RPB is subject to the Court's personal jurisdiction on the ground that it ***purposely availed*** itself of the benefits of conducting activities in California that relate to Plaintiff's § 638.51 claim.

The facts at bar also establish that RPB's actions relating to that claim demonstrate ***purposeful direction*** at California. Where, as here, a case is based on an alleged tort, courts assess whether a Plaintiff has shown that purposeful direction at the forum has been satisfied using the three-part *Calder* "effects test." *See Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603-04 (9th Cir. 2018). Under the *Calder* test, a plaintiff must allege a defendant: "(1) committed an intentional act[;] (2) expressly aimed at the forum state[;] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). "In the context of tort claims, the Supreme Court has held that the purposeful direction requirement is met where the defendants intended to and did indeed cause injury within the forum state, even though the actions that gave rise to the effects took place outside the forum." *Calder v. Jones*, 465 U.S. 783 (1985).

### a.    RPB Committed Multiple Intentional Acts Expressly Aimed at California.

"The 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger v. Fred Martin Motor Co.*, 374

F.3d 797, 807 (9th Cir. 2004). Where a tort is "intentional," the Ninth Circuit has "found jurisdiction in the plaintiff's home forum," even though the directions of the intentional act and the known impact diverged, because "in such cases the 'acts are performed for the very purpose of having their consequences felt in the forum state.'" *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989). Here, RPB engaged in multiple intentional acts performed for having their consequences felt in California – selling products online to California residents, collecting data from Plaintiff's device in California, contracting with TikTok for software and cooperation in marketing surveillance, agreeing to submit to the application of California law and jurisdiction in California courts (with respect to disputes with TikTok) and transmitting Plaintiff's data to TikTok. Thus Plaintiff has established that RPB "expressly aimed" its conduct relating to Plaintiff's claim at California.

Counter to RPB's assertion, Mot., at 15:20-28, the selling of products through a website to California can form part of a basis for the exercise of personal jurisdiction ***when it is combined with marketing surveillance efforts***. *See, e.g., Rodriguez v. Aquatic Sales Solutions LLC*, 735 F. Supp. 3d 1208, 1219-20 (C.D. Cal. May 29, 2024); *Swarts v. Home Depot, Inc*., No. 23-CV-0995-JST, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023). In *Rodriguez*, the court found that it had specific personal jurisdiction over the out of state defendant where plaintiff's "chats" with the defendant's website, while he was in California had been intercepted, and the defendant sold physical goods to California residents through the website. *See* 735 F. Supp. 3d at 1219; *see also Swarts* (holding that

1   Home Depot had purposefully directed its conduct at the forum by recording and allowing

2   to have intercepted plaintiff's chat with its website, and by "selling a physical product to

3   [plaintiff] via its interactive website").

4           c.      **RPB Knew Harm Was Likely to be Suffered in California.**

5           With regards to the third element of the *Calder* test, RPB caused harm that it knew

6   would be suffered in California. That harm consists of (1) the interception of Plaintiff's

7   communications and data sent from California; (2) the dissemination of the

8   communications and data to TikTok in California; and (3) the consequences of these events

9   to Plaintiff living his life in California. Moreover, the Complaint alleges that the marketing

10  surveillance using TikTok Software is used on all visitors to the Website, including those

11  based in California.

12          4.      **Exercising Personal Jurisdiction Here Would Be Reasonable.**

13          Once the first two prongs of the *Herbal Brands* personal jurisdiction test are

14  satisfied, ***the burden shifts to the defendant*** to "present a compelling case" that the

15  exercise of jurisdiction would not be reasonable. *Herbal Brands,* 72 F.4th at 1090. Here

16  RPB has not even raised in its Motion to Dismiss the argument that even had Plaintiff

17  satisfied the test's first two prongs, such an exercise would be unreasonable here.[1] In any

18

19

20  ───────────────
    [1] By failing to raise the argument in its moving papers, ***RPB has waived this argument*** – even if it
    attempts to raise it in its reply papers. *See, e.g., Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)
    (endorsing district court's refusal to consider new arguments made in a reply brief); *SBCW Consulting*
21  *Inc. v. TSYS Merch. Sols., LLC*, No. 2:24-cv-03193-SB-AGR, 2024 U.S. Dist. LEXIS 195586, at *8 n.5
    (C.D. Cal. Oct. 28, 2024) (refusing to consider new arguments made in a reply brief).

PTF'S OPP. TO DEF'S MOTION TO DISMISS                    2:25-cv-00106-PVC

event, RPB would be unable to make such a case here, given RPB's actions relating to California-based TikTok and the extent of its retail activities in the state.

Accordingly, the Court should find that it has personal jurisdiction over RPB.

### 2. **The Court May Wish to Defer Its Ruling on Jurisdiction Until the Ninth Circuit Issues its En Banc Decision in _Briskin v. Shopify, Inc._**

The Ninth Circuit recently noted in _Daghaly v. Bloomingdales.com_, LLC, No. 23-4122, 2024 WL 5134350, at *2 (9th Cir. Dec. 17, 2024) (unpublished), a case involving a claim under § 631(a) based on the interception and recording of communications with a website, that the district court's personal jurisdiction determination over the website operator on remand after appeal would be "a question that may be informed by this court's forthcoming en banc decision in _Briskin v. Shopify, Inc._, No. 22-15815, _reh'g en banc granted_, 101 F.4th 706 (May 14, 2024)."

### D. **Plaintiff States a Claim That Defendant Violated CIPA**

### 1. **CIPA's Prohibition On Trap And Trace Devices Applies To The TikTok Software and Internet Communications**

It is very clear from the relevant terms and their statutory definitions that CIPA's prohibition on trap and trace devices in § 638.51 applies to the internet, despite Defendant's numerous bolded yet unexplained assertions. Plaintiff asserts that Defendant violated California's Trap and Trace Law. California Penal Code § 638.51 provides, in pertinent part, as follows:

1      (a) Except as provided in subdivision (b), a person may not install or

2      use a pen register or a trap and trace device without first obtaining a

3      court order pursuant to Section 638.52 or 638.53.

4      (b) A provider of electronic or wire communication service may use

5      a pen register or a trap and trace device for any of the following

6      purposes:

7      (1) To operate, maintain, and test a wire or electronic communication

8      service.

9                                   * * *

10     (5) If the consent of the user of that service has been obtained.

11  Thus, to state a claim under § 638.51 plaintiffs need to allege facts establishing, at most,

12  that a defendant installed and used a pen register or trap and trace device without first

13  obtaining a court order. *Id*. § 638.51. California law defines a "trap and trace device" as:

14          a device or process that captures the incoming electronic or other

15          impulses that identify the originating number or other dialing,

16          routing, addressing, or signaling information reasonably likely to

17          identify the source of a wire or electronic communication, but

18          not the contents of a communication.

19  Cal. Penal Code § 638.50(c). The Trap and Trace Law further specifies that the terms "wire

20  communication" and "electronic communication" shall "have the meanings set forth in

21  subdivision (a) of Section 629.51." *Id*. § 638.50(a). The definition for "electronic

25

communication" in § 629.51(a)(2) states that, subject to certain exceptions not relevant here, electronic communication means "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." Applying this definition for electronic communication to the definition of a trap and trace device in § 638.50(c) clearly shows that trap and trace devices can encompass "a wire, radio, electromagnetic, photoelectric, or photo-optical system."

Notably, Defendant spends very little space addressing the actual statutory sections discussed above that every court has relied on and found central to their decisions. Defendant instead raises a hodgepodge of largely unrelated cases and arguments, all of which are either entirely irrelevant, have already been roundly rejected by the courts, or simply ignore the relevant authorities. But, as Judge Breyer in the Northern District explained:

> As the *Shah* and *Greenley* courts held, "the Court cannot ignore the expansive language in the California Legislature's chosen definition of pen register," which is "specific as to the type of data collected," but "vague and inclusive as to the form of the collection tool" (i.e. "device or process").

*Mirmalek*, 2024 WL 5102709, at *3 (quoting *Greenley*, 684 F. Supp. 3d at 1050 and *Shah*, 2024 WL 4539577, at *1) (cleaned up). "Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute)." *Lungren v. Deukmejian*, 45 Cal. 3d 727,

735 (1988) (citations omitted); *see also Jarman v. HCR ManorCare, Inc.*, 10 Cal.5th 375 (2020) ("If the language is clear, courts must generally follow its plain meaning . . ."). Multiple state court judges have also reached the same exact conclusion in reasoned opinions clearly drafted by the judge as opposed to, for example, simply issuing a party's proposed statement of decision. *E.g.*, *Anne Heiting v. Taylor Fresh Foods, Inc.*, LASC Case No. 24STCV12891 (July 31, 2024); *Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 (September 17, 2024); *Heiting v. IHOP Restaurants*, LASC Case No. 24STCV14453 (October 28, 2024); *Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024).

### 2. <u>Defendant's Additional Statutory Arguments Lack Legal Basis</u>

#### *a.* <u>The Trap And Trace Law's Authorization For Court Orders</u>

Against the great weight of authority Defendant argues only that the section addressing court orders for a trap and trace devices contains two references to phone lines. The provisions in Section 638.52(d)(1) and (3) merely require that a court order for a trap and trace device that "is to be attached" to a phone line must specify the listed name and number, respectively. Nothing about this procedural requirement alters the definition of trap and trace devices in Section 638.50(c) or even limits court orders authorizing trap and trace devices to phone lines. And, even if it did, that would only mean that law enforcement, just like everyone else, cannot legally use trap and trace devices on internet communications. Far from an absurd result, it is clear the Legislature intended for

Defendant to never be able to seek a court order authorizing the installation of a trap and trace device *because that is a crime* and also because *Defendant is not a law enforcement entity*. The California Legislature intended for Defendant to never install trap and trace devices of any kind, and for law enforcement to do so only for phone lines and subject to the statutory procedures and requirements for a court order. Perhaps unsurprisingly, it was also perfectly reasonable for the California Legislature to decide not to authorize law enforcement entities like LAPD to run massive worldwide social media networks that collect data on millions of Americans and billions of people worldwide. Defendant makes many arguments based around CIPA's provisions for court orders but ignores the most obvious conclusions of all – CIPA broadly prohibits Trap and Trace devices for everyone, and there is only a limited exception which doesn't apply to Defendant because Defendant shouldn't be running Trap and Trace Devices.

> *b.* **The California Consumer Privacy Act ("CCPA") Does Not Conflict With CIPA**

Defendant makes no actual legal argument for why the CCPA is relevant to interpreting section 631(a) of CIPA. It states that the CCPA "comprehensively regulates the data collection and sharing practices Plaintiff complains about in the Complaint," Mot. at 26-27, but nowhere does Defendant cite to any legal doctrine explaining why or how a framework, even a purportedly comprehensive one, is relevant to interpreting CIPA. The closest legal doctrine that would support a newer statute displacing an older statute or requiring it to be interpreted more narrowly despite the absence of any such language is

1    repeal by implication. But repeals by implication they are disfavored when interpreting

2    California statutes. *Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627, 637 (2018) ("We do not

3    presume that the Legislature intends, when it enacts a statute, to overthrow long-

4    established principles of law unless such intention is clearly expressed or necessarily

5    implied.") (citation omitted). To invoke the doctrine of implied repeal there must be no

6    rational basis for harmonizing the two statutes, and the statutes must be "irreconcilable,

7    clearly repugnant, and so inconsistent that the two cannot have concurrent operation." *Id.*

8    (cleaned up). Defendant makes no such argument, and no such repugnancy or even conflict

9    exists because Defendant cites no CCPA provisions requiring it to violate CIPA.

10           Defendant also plainly ignores the plain text of the CCPA stating that "law relating

11    to consumers' personal information should be construed to harmonize with the provisions

12    of this title." Cal. Civ. Code § 1798.175. It also explicitly states that "in the event of a

13    conflict between other laws and the provisions of this title, the provisions of the law that

14    afford the greatest protection for the right of privacy for consumers shall control." *Id.* Thus,

15    even if there were a conflict between CIPA and the CCPA, something Defendant does not

16    argue, the CCPA itself requires CIPA's application in this case because of CIPA's greater

17    consumer privacy protections.

18           *c.*  **Defendant Incorrectly Confuses Different CIPA Provisions**

19           Finally, Defendant improperly uses language from § 629.51(b) to try to read the Trap

20    and Trace Law as only applying to communications "in transit" that are intercepted by

21

PTF'S OPP. TO DEF'S MOTION TO DISMISS                    2:25-cv-00106-PVC

1    third-parties, or incorporating language, doctrine, or defenses in completely unrelated

2    provisions of CIPA. Mot. at 22-24.

3        Defendant incorrectly quotes language from § 629.51(b) that is clearly not

4    incorporated into the Trap and Trace Law because it is not part of the "definitions" from §

5    629.51. Moreover, § 629.51(b) is also very clear that when it refers to the interpretive

6    limitations of "this chapter" that means Chapter 1.4 of the Penal Code where that provision

7    is found. This provision did not somehow secretly alter the meaning of CIPA because CIPA

8    was enacted as part of a different chapter, Chapter 1.5 of the Penal Code. Defendant

9    similarly cites not relevant authority imposing a "transit" requirement or extending the

10   judicially created immunity for parties wiretapping their own communications found in §

11   631 to other completely unrelated provisions of CIPA where they make absolutely no

12   sense.

13        **3.  Defendant's Parade of Horribles Are Simply Wild Conjecture**

14        **With No Basis In The Allegations In The Complaint**

15        Defendant also makes a bold proclamation that it "is therefore not hyperbole to

16   state that Plaintiff's interpretation of this law would criminalize the Internet." Mot. at 25

17   n. 34. It won't. Defendant's entire argument basically that websites routinely and

18   sometimes need to collect IP addresses from visitors, and a ruling for Plaintiff makes that

19   a criminal act. But that's not the law and it's not what Plaintiff alleges in the Complaint.

20   Plaintiff's allegations are clear that Defendant did not violate the law *solely* because it

21   collected Plaintiff's IP address. Defendant *also* assisted TikTok in acquiring a vast

1  amount of information about Plaintiff, everything it could, including his IP address,

2  browser data, device data, even geographic information, all in order to use that data to

3  fingerprint and de-anonymize him. Defendant could not have achieved that by recording

4  just IP addresses, if it could have it would have. The FAC instead alleges that the TikTok

5  Software exists because it was "designed solely to meet this objective." FAC ¶ 18. Stated

6  more simply, nothing about running a website on the internet required Defendant to cause

7  Plaintiff's personal information to be sent to TikTok in order to de-anonymize his visit to

8  Defendant's website. That was simply a choice Defendant made for its own financial

9  gain in violation of California law, and Plaintiff is entitled to seek redress for that

10  violation of his rights in Court.

11      Defendant also makes the bizarre arguments that if Plaintiff has correctly

12  interpreted CIPA's prohibition on Trap and Trace devices then Google Analytics is

13  illegal, virtually every website is also illegally violating this law, and, somehow, *child*

14  *predator stings will be illegal*. Mot. at 2-4, 21. Defendant's arguments are bizarre and

15  bordering on the incomprehensible. The Complaint does not address any of these

16  scenarios, nor does Defendant make any sort of cogent argument as to how they apply.

17  Somehow an argument about consent under a different and inapplicable provision of

18  CIPA means that the Trap and Trace Law bans child predator stings because of a consent

19  issue of all things? And somehow Google Analytics must also be illegal even though

20  there are absolutely no facts before the Court showing that Google Analytics does what

21  the TikTok Software does. If Defendant wishes to raise its concerns about these horrible

31

conclusions, then it will have to do so with competent expert witness that makes a genuine attempt to grapple with the actual legal theory articulated by Plaintiff instead of making up whatever wild facts it wants.

## V.    CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss, or in the alternative, permit Plaintiff leave to amend to add more facts should the Court find the Complaint deficient.

DATED: March 18, 2025          **TAULER SMITH LLP**


By:  _/s/ Robert Tauler_____
                    Robert Tauler, Esq.
                    Attorneys for Plaintiff
                    Robert Conohan

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Robert Conohan, certifies that this brief contains 8062 words, which complies with the word limit of 9,000 per stipulation of the parties that was approved by the Court. Dkt. 11.

DATED: March 18, 2025              **TAULER SMITH LLP**


                                  By:  /s/ Narain Kumar
                                       Narain Kumar, Esq.
                                       Attorneys for Plaintiff
                                       Robert Conohan

PTF'S OPP. TO DEF'S MOTION TO DISMISS              2:25-cv-00106-PVC