LYNN R. FIORENTINO (SBN 226691)
lynn.fiorentino@afslaw.com
SUSANNE BONIADI (SBN 341512)
susanne.boniadi@afslaw.com
**ARENTFOX SCHIFF LLP**
555 S. Flower St., 43rd Floor
Los Angeles, CA 90071
Telephone: 213.629.7400
Facsimile: 213.629.7401

Attorneys for Defendant
RAD POWER BIKES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CONOHAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RAD POWER BIKES, INC., a Washington corporation,<br><br>Defendant. | Case No. 2:25-cv-00106-PVC<br><br>**CLASS ACTION**<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date:       April 8, 2025<br>Time:       10:00 a.m.<br>Courtroom:  590<br>Judge:      Hon. Pedro V. Castillo<br><br>Date Action Filed: January 6, 2025 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

    A. Plaintiff Continues To Conspicuously Fail To Identify Any Concrete Harm From Visiting A Commercial Website, And Doing Nothing More. ................................................................................. 2

    B. Plaintiff Has Failed To Meet His Burden Of Establishing That This Court May Exercise Specific Personal Jurisdiction Over Rad Power Bikes. ........................................................................................ 5

    C. Trap And Trace Devices Are Expressly Limited To Third-Party Interceptions, And Are Strictly Limited To Telephone Lines. ............. 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Calder v. Jones*,
   465 U.S. 783 ............................................................................................................ 6

*Conohan v. Gen. Digital Inc.*,
   2:24-cv-6894-MCS-PVC, ECF No. 20 – Order Re: Motion to
   Dismiss (C.D. Cal. Feb. 19, 2025) ................................................................ *passim*

*Daghaly v. Bloomingdales.com, LLC*,
   No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) ............................... 1, 2

*In re Facebook*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................ 2

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
   905 F.3d 597 (9th Cir. 2018) ................................................................................ 6

*Gabrielli v. Insider, Inc.*,
   No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18,
   2025) .................................................................................................................... 4

*Heiting v. Marriott Int'l, Inc.*,
   743 F. Supp. 3d 1163 (C.D. Cal. 2024) ................................................................ 5

*Hughes v. Vivint, Inc.*,
   No. CV 24-3081-GW-KSX, 2024 WL 5179916 (C.D. Cal. July 12,
   2024) .................................................................................................................... 3

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal. 2022) ................................................................ 4

*Jones v. Bloomingdales.com, LLC*,
   124 F.4th 535 (8th Cir. 2024) ............................................................................ 2, 4

*Kauffman v. Home Depot, Inc.*,
   No. 23-CV-0259-AGS-AHG, 2024 WL 221434 (S.D. Cal. Jan. 19,
   2024) .................................................................................................................... 6

*Lightoller v. Jetblue Airways Corp.*,
  No. 3:23-cv-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12,
  2023) ................................................................................................................... 4

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ............................................................................. 5

*In re Online DVD Rental Antitrust Litig.*,
  2011 WL 5883772 (N.D. Cal. Nov. 23, 2011) ..................................................... 3

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait*,
  757 F.2d 1058 (9th Cir. 1985) ............................................................................. 6

*People v. Larkin*,
  194 Cal. App. 3d 650 (1987) ............................................................................. 10

*Reyes v. Wells Fargo Bank*,
  2017 WL 11568871 (C.D. Cal. Aug. 17, 2017) ................................................... 3

*Rodriguez v. Autotrader.com, Inc.*,
  No. 2:24-CV-08735-RGK-JC, 2025 WL 65409 (C.D. Cal. Jan. 8,
  2025) ................................................................................................................... 8

*Sanchez v. Cars.com Inc.*,
  Case No. 24STCV13201 (Cal.Super. Jan. 27, 2025) ........................................ 10

*Shapiro v. United States*,
  335 U.S. 1 (1948) .............................................................................................. 10

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) ............................................................................. 6

*Smith v. Maryland*,
  442 U.S. 735 (1979) .......................................................................................... 10

*Speidel v. Markota*,
  2021 WL 3463895 (C.D. Cal. 2021) ................................................................... 6

*In re The Application of the United States of America for an Order Authorizing the*
  *use of a Cellular Telephone Digital,* 885 F. Supp. 197, 200 (C.D.
  Cal. 1995) ......................................................................................................... 10

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................................. 3

*Zarif v. Hwareh.com, Inc.* No. 23-cv-0565-BAS-DEB
   2024 WL 1268167, (S.D. Cal. Mar. 2024) .......................................................... 6

**Statutes**

18 U.S.C. § 3127(3)(4) ............................................................................................ 10

Cal. Penal Code § 629.51 ...................................................................................... 8, 9

Cal. Penal Code § 638.50 .............................................................................. 3, 7, 8, 9

Cal. Penal Code § 638.51 ................................................................................. 1, 7, 8

Cal. Penal Code § 638.52 .......................................................................................... 1

**Other Authorities**

Trap and Trace Law ................................................................................................... 8

## I. INTRODUCTION

Plaintiff's Opposition is notable for its absence. First, he does not even attempt to distinguish the recent Ninth and Eighth Circuit *Bloomingdales.com* decisions holding that a plaintiff does not suffer *any* injury merely by visiting a website. For good reason, as the Courts of Appeal addressed the exact situation here: a plaintiff who "took [no] actions other than simply opening the webpage and then closing it" and who then complained her "information collected is transmitted to third parties."[1] That's *exactly* this case, and the Court should follow suit here.

Second, Plaintiff likewise does not dispute that RPB's website is not in any way *targeted at California consumers* in any unique way, which is the real test for purposeful direction here, rather than where a vendor may have office space. Indeed, in an otherwise identical case, the Court recently dismissed another out-of-state target of this litigation scheme for these exact reasons, and the Court should do so again.[2]

Finally, Plaintiff also does not dispute that his interpretation of Section 638.51 would apply to *anyone* collecting the telephone number of an incoming telephone call through their Caller ID. Indeed, telephone numbers were the *only* specific information the Legislature ever contemplated when enacting this law – meaning tens of millions of Californians would violate this law every day simply by receiving a phone call if Plaintiff's theory had any merit – which Plaintiff contends would be "merely surprising" but *not* an "absurd" result. Opp. at 3. And Plaintiff also does not dispute that they would have **no defense** – because the *only* exceptions to liability under this law apply to the "provider of [an] electronic or wire communication service" *or* a "peace officer" who obtains a court order (provided "the telephone line to which the pen register or trap and trace device is to be attached" is identified). Cal. Penal Code. §§ 638.51(b), 638.52(d).

---

[1] Mem. at 20 (citing *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024)).
[2] *Conohan v. Gen. Digital Inc.*, 2:24-cv-6894-MCS-PVC, ECF No. 20 – Order Re: Motion to Dismiss (C.D. Cal. Feb. 19, 2025) ("*Gen Digital Order*").

1   At bottom, either the Court can accept Plaintiff's theory that the Legislature
2   not only intended to *silently* criminalize ubiquitous telephone technology used by
3   **hundreds of millions** of Americans – through a law enforcement *interception* statute
4   – but that this law should then be interpreted in the same way against website
5   operators. Or the Court can interpret this law according to its plain language: this
6   law **only applies to <u>third-party</u> interceptions** – expressly so. And under 50 years of
7   binding CIPA precedent, which Plaintiff also conveniently ignores, a party does not
8   "intercept" or "capture" information, it receives it.

   A.  **<u>Plaintiff Continues To Conspicuously Fail To Identify Any Concrete Harm From Visiting A Commercial Website, And Doing Nothing More.</u>**

   RPB established that numerous courts – including the Ninth and Eighth Circuits – have recently addressed the exact issue presented here: whether a plaintiff suffers any concrete injury by visiting a website, doing nothing more, and having information related to that visit shared with third parties. Mem. at 19-21. And these courts have consistently answered this question in the negative. Indeed, the Ninth Circuit went out of its way to *sua sponte* hold that the plaintiff in *Daghaly* did not suffer any concrete injury by having information related to her website visit "transmitted to third parties." *Daghaly*, 2024 WL 5134350, at *1.[3] The Eighth Circuit similarly held that not only was the plaintiff not injured "at all," but that "'[b]reezy declarations' of an intangible yet concrete injury without support won't suffice" to plausibly establish standing. *See Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 540 (8th Cir. 2024). And as detailed at the outset, Plaintiff simply chose

---

[3]  Plaintiff makes much of the pre-*TransUnion* and pre-*Bloomingdales.com* decision of *In re Facebook*, 956 F.3d 589 (9th Cir. 2020), which even the *Bloomingdales.com* panel cited on its way to finding the exact "injury" here is no injury at all. That decision is clearly distinguishable because it involved a *third party* – Meta – allegedly continuing to monitor every website its identified users were visiting *after logging off Facebook*, "'**no matter how sensitive**' or personal users' browsing histories were." *Id.* at 598 (emphasis added). Alleged third-party eavesdropping on expressly sensitive website activity is not remotely analogous to a retailer collecting routine and anonymous metadata on its own website.

to ignore not only these appellate decisions, but also the lower court decisions dismissing these exact cookie-cutter trap-and-trace complaints. The only conclusion the Court can and should draw from Plaintiff's failure to address this authority is that he concedes it is fatal to his case.[4]

Instead of addressing these decisions, Plaintiff bizarrely purports to "quote" RPB's Motion to Dismiss at length. Opp. at 11-12 ("citing" Mot. at 7). But whatever Plaintiff's counsel is quoting, that argument is not from RPB's Motion – indicating that Plaintiff's counsel is copying and pasting from one of the hundreds of other setup "trap and trace" cases they are pursuing. And this was on the way to making the "breezy declarations" that the alleged collection of *anonymous* data – "device and browser, geographic information, referral and url tracking," information that <u>his own browser is disclosing</u>[5] – somehow constitutes "an invasion of privacy." Opp. at 12.

But as Judge Wu correctly noted in dismissing an otherwise identical Tauler Smith trap-and-trace complaint, there has to be "a close historical or common-law analogue for their asserted injury." *Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *3 (C.D. Cal. July 12, 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). Here, however, Plaintiff merely parrots terms like "invasion of privacy" or "right to privacy" several times, Opp. at 10-11, without recognizing that these are *not* common-law *claims*. Rather, intrusion upon *seclusion*

---

[4] *See Reyes v. Wells Fargo Bank*, 2017 WL 11568871, at *4 (C.D. Cal. Aug. 17, 2017) (holding that plaintiff who failed to respond conceded defendant's argument, and collecting cases); *see also In re Online DVD Rental Antitrust Litig.*, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011) (failure to respond to argument on merits "viewed as grounds for waiver or concession of the argument").

[5] *See* Opp. at 4 ("The [TikTok Software] collects information available via standard web browsers, like Chrome."). Thus, one of the fundamental absurdities of these claims is that RPB's website is admittedly collecting what Plaintiff's Internet browser is collecting and disclosing itself. In other words, no one is forcing this anonymous information to be provided – i.e., "capturing" it, as the statute expressly requires. And if Plaintiff's theory had any merit, that would also mean that every individual using Google Chrome is using a pen register, because it is admittedly "record[ing] … signaling information transmitted" on its way out. Cal. Penal Code § 638.50. These are the absurd results that follow when you apply a *telephone interception* statute to Internet protocol reception – which was indisputably not the intent of this law.

and public disclosure of *private* facts are the actual torts that would need to be closely approximated. And Plaintiff understandably never attempts to establish how visiting a retailer's *public* website on the *public* Internet, where *anonymous* metadata is allegedly collected, is remotely close to these historical torts.[6] Of course, it's not.

Indeed, as numerous courts have found, even where information that is collected and disclosed is personally identifiable by itself, that still does not amount to concrete harm, let alone one close to a common-law tort. *See, e.g., I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (finding collection and disclosure of "basic contact information, including one's email address, phone number, or Facebook or Zynga username" to be insufficiently concrete to confer standing as there is "an insufficient fit between the loss of information alleged here and the common law privacy torts of private disclosure of private facts and intrusion upon seclusion"); *Lightoller v. Jetblue Airways Corp.*, No. 3:23-cv-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (same); *Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *9 (S.D.N.Y. Feb. 18, 2025) (dismissing trap-and-trace complaint with prejudice because lack of any harm associated with collection of anonymous metadata "cannot be cured with an amendment.").

At bottom, "how dare your public website collect the anonymous signaling information my browser is disclosing to it" is not a claim that has a remotely close common-law analogue. And as the Court of Appeal and numerous other courts have held in indistinguishable circumstances, these digital slip-and-fall claims are devoid of any actual injury and should be dismissed on this ground alone, with prejudice.

---

[6] As the Eighth Circuit ruled in *Jones*, "[j]ust as a security camera at a physical store might record how customers react to a display of products, session-replay technology captures how a store's online customers react to digital displays …. We fail to see how this invades Jones's privacy." *Jones*, 124 F. 4th at 540. In short, there's no historical parallel for assuming one can visit a retailer's physical *or* online store and not to be monitored in some way.

**B.  Plaintiff Has Failed To Meet His Burden Of Establishing That This Court May Exercise Specific Personal Jurisdiction Over Rad Power Bikes.**

RPB also demonstrated that the Court lacks personal jurisdiction over RPB because (1) it is a Washington corporation not subject to general jurisdiction in California, Mem. at 13-14, and (2) specific jurisdiction is also lacking, as RPB's website at issue, and its alleged collection of otherwise anonymous metadata, is not purposefully targeted at California residents in any way. Mem. at 14-19. Indeed, as noted above, after RPB filed its Motion to Dismiss, this Court dismissed an identical Tauler Smith trap-and-trace complaint filed against an Arizona company also allegedly incorporating the TikTok software on its website. *Gen Digital Order* at 3 (holding that the applicable purposeful direction requires weighing "whether the defendant '**individually targeted**' *a plaintiff* in that specific forum.") (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)) (emphasis added); *see also id* at 4 (citing *Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1171–72 (C.D. Cal. 2024) (also dismissing template Tauler Smith trap-and-trace complaint on personal jurisdiction grounds "[b]ecause the law is clear that a defendant cannot be sued in any forum where its website is visible, ... and because Heiting has not shown that Marriott operated its website in a manner that **specifically targeted California**") (emphasis added).

Plaintiff does not dispute that RPB's website does not individually target California residents in any way. *That* concession by itself is dispositive here in RPB's favor, no different than *Gen Digital*. Indeed, it's the *same* complaint, except replace Washington for Arizona. For his part, Plaintiff instead engages in the legally irrelevant bait-and-switch that since *TikTok* – RPB's alleged vendor – fortuitously has its office in California, somehow that amounts to purposeful direction on *RPB's* part. But this is like arguing every individual with an iPhone would be subject to personal jurisdiction in California for a trap-and-trace claim because Apple is sent

the same types of "signaling information" when a person receives a call, text, iMessage or email and that information is later sent to Apple's iCloud. Just as over 150 million Americans did not purposefully direct where Apple chose to have its principal place of business, or negotiate the governing law of Apple's Terms of Service,[7] RPB did not purposefully direct where TikTok chose its office. And Plaintiff understandably does not contend otherwise.

Indeed, well before the Court of Appeals adopted the three-part *Schwarzenegger* test in 2004, it was clearly established that "the mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction." *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir. 1990); *see also Speidel v. Markota*, 2021 WL 3463895, at *4 (C.D. Cal. 2021) (finding no personal jurisdiction where party's vendor relevant to case was located in California); *Kauffman v. Home Depot, Inc.*, No. 23-CV-0259-AGS-AHG, 2024 WL 221434, at *3 (S.D. Cal. Jan. 19, 2024) (holding that alleged "data capture [] began as soon as he entered the website" and thus purported injury arose out of or related to where defendant was operating its website, and *not* what allegedly happened later).

Plaintiff's reliance on *Freestream Aircraft* and *Paccar Int'l* also misses the mark. Opp. at 21. Two distinct standards apply when determining whether an out-of-state defendant has "purposefully directed" its activities towards the forum. If a ***defendant's*** injury-causing ***conduct*** occurs within the forum state, then that act suffices for purposeful direction. *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,

---

[7] Plaintiff's related argument that TikTok's Terms specify California courts as the forum for any *dispute with TikTok* is also irrelevant because he is not a third-party beneficiary of this agreement, and this is (obviously) not a dispute *arising out* TikTok's Terms of Service or an attempt to enforce them. Similarly, Plaintiff's other arguments about RPB's sales of its bicycles and retail stores in California are equally irrelevant because Plaintiff's claim does not arise from the sale of RPB's products. *See Gen Digital Order* at 4 (rejecting same argument relying on *Herbal Brands* and noting "Plaintiff does not even allege that he availed himself of Defendant's services"); *see also Zarif v. Hwareh.com, Inc.*, No. 23-CV-0565-BAS-DEB, 2024 WL 1268167, at *4 (S.D. Cal. Mar. 25, 2024) ("Plaintiff has not alleged she ordered any products from Defendant's website, and even if she did, the harm she suffered was not premised on the sale … of a product. Rather, her mere browsing and use of Defendant's website is the basis for her complaint.")

905 F.3d 597, 603 (9th Cir. 2018) (citing *Paccar Int'l, Inc. v. Commercial Bank of Kuwait*, 757 F.2d 1058, 1064 (9th Cir. 1985)) (cleaned up). If a defendant's conduct occurs *outside* the forum state, as here, then courts apply the "effects test of *Calder v. Jones*, 465 U.S. 783." *Id*. at 603 (explaining that "the [*Calder*] inquiry focuses on conduct that takes place *outside* the forum state and that has effects inside the forum state."). Thus, Plaintiff is clearly misstating the law and conflating his (non)-injury in California with RPB's alleged *conduct in Washington*.

That alleged conduct was the operation of common website analytics tools in Washington, where the alleged collection of *otherwise anonymous* metadata took place *on RPB's website*. Plaintiff's claim, such as it is, arose when that data was "captured" in Washington. And as the Court and numerous others have already held in indistinguishable cases, operating a nationally accessible website that does not '**individually target[]**' *a plaintiff*" in California means that the Court cannot properly exercise jurisdiction over RPB here. The same result should follow again.[8]

### C. Trap And Trace Devices Are Expressly Limited To Third-Party Interceptions, And Are Strictly Limited To Telephone Lines.

RPB established that as a matter of law, a trap-and-trace device is expressly limited by its incorporated definitions "to the **interceptions** of wire and electronic communications. It does not apply to stored communications or stored content." Mem. at 9, 22-24 (citing Penal Code §§ 629.51, 638.50). And under 50 years of binding CIPA precedent, a party to a communication indisputably cannot "intercept" it. Mem. at 6-7, 22-24. Further, Section 638.51 independently cannot apply to Internet data exchanges based on the overall statutory scheme, the relevant legislative history and judicial interpretations of the applicable statutory language that the Legislature must be considered to have adopted. Mem. at 8-10, 24-26. In short,

---

[8] For the avoidance of doubt, Plaintiff did not ask for jurisdictional discovery, and he would not be entitled to it in any event. *See Gen Digital Order* at 5 (granting motion without leave to amend and denying express request for jurisdictional discovery).

Section 638.51 is strictly limited to devices placed by third parties on *telephone lines.*

In a supreme act of chutzpah, Plaintiff's counsel opposed RPB's Motion with a sworn declaration conclusively establishing that, by using only the Google Chrome browser, they can see exactly the third parties with which RPB is communicating – but *not the contents* of those communications. *See* Shapiro Declaration, ¶ 2 (showing that RPB website is communicating with TikTok, Bing, Shopify, Facebook, etc.); *id.* at ¶ 4 (admitting that they used Chrome to determine that "the Website instantly sends communications to TikTok") (ECF No. 14-1). In other words, they have effectively admitted that anyone using Chrome is using an illegal trap-and-trace device under their own contrived interpretation of this statute. But luckily for Mr. Shapiro, RPB, the Court's IT Department, and Internet users everywhere, Plaintiff's arguments regarding this law are easily rebutted.

First, Plaintiff cites *Autotrader.com* where Judge Klausner attempted to defend his (mis)interpretation of the statute as not sweeping in basic Caller ID service[9] because, "[u]nlike a caller ID system, which is installed on the call recipient's device, the Website installs the tracking software on the visitor's browser." *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 65409, at *6 (C.D. Cal. Jan. 8, 2025). Of course, that is exactly what Plaintiff is alleging here too: "the TikTok Software gathers" information "by running code or 'scripts' **on the Website**." Compl. ¶ 11 (emphasis added); *see also id.* ¶ 12 (same). Thus, *Autotrader.com*, such as it is, supports RPB, not Plaintiff.

Second, Plaintiff curiously argues that Section 629.51(b) "is clearly not incorporated into the Trap and Trace Law because it is not part of the 'definitions'

---

[9] Plaintiff also suggests that because the FCC preempted the CPUC's conflicting Caller ID rules in the 1990s, somehow that would prevent Section 638.51 – enacted over twenty years later – from not sweeping in Caller ID either. Opp. at 3. There is nothing logical in that argument to address. Rather, it's pure deflection from the fact that under Plaintiff's contrived view of Section 638.51, a telephone number would clearly be an "originating number" covered under the law. And when it's "collected" by a "device or process" – like an iPhone – there is nothing left to be done to "violate" this law under Plaintiff's view.

from § 629.51." Opp. at 30. Plaintiff appears to be arguing that because Section 629.51(b) states that "*this chapter* applies to the interceptions of wire and electronic communications," this somehow only limits the *same definitions* later incorporated by reference via Section 638.50 when they are used in Chapter 1.4, but the *same terms* should be interpreted entirely differently when used in Chapter 1.5.

But this is silly. Section 629.51(a) *also* begins with "[f]or purposes of this chapter, the following terms have the following meanings. …" Cal. Penal Code § 629.51(a) (emphasis added). By Plaintiff's logic, these "self-limiting" definitions couldn't apply *at all* in Chapter 1.5 for the *same reason*. This argument also ignores that the Legislature also made this point clear – again – in Section 629.51(c) – without the prefatory "as used in this chapter" phrase that Plaintiff pins all his argument on. Thus, *both* Sections 629.51(b) and (c) clearly and expressly limit the meanings of covered communications in Section 629.51(a) to those being *intercepted*, and it is *those meanings* that are incorporated by Section 638.50.

This is the only interpretation that comports with the plain language of the statute.[10] It also explains why there is no defense available for a party, Mem. at 22, which Plaintiff also does not dispute – because they don't need it! This is thus the only interpretation that explains why hundreds of millions of Americans are not violating this law everyday by using Caller ID, "capturing" someone's email address, or using any number of website browsers that collect the "originating number" – or IP address – of a website.[11] Indeed, a trap and trace device is something that expressly "*captures*" information. And the primary definition of "capture" is to "take by force or stratagem; take prisoner; seize: **The police** *captured the burglar*."[12]

---

[10] At *worst*, if the Court found the statute ambiguous, then the Rule of Lenity would have to apply to this criminal law, which Plaintiff does not dispute. Either way, RPB's interpretation would have to prevail here.

[11] Plaintiff also tries to rewrite the definition of a "trap and trace device" so it would only apply when it's used to de-anonymize a visitor. But that's not what the statutory definition says – as "reasonably likely to identify" only modifies "signaling information. An "originating number," like a telephone number would be sufficient information by itself if Plaintiff's theory had merit. But it doesn't.

[12] See https://www.dictionary.com/browse/capture (emphasis added).

Simply put, the Legislature adopted language that is plainly synonymous with third-party interception. It chose "capture," *not* "collect" or "receive," and Plaintiff is concededly complaining that RPB's website is collecting information that his own browser is admittedly disclosing. Opp. at 5.

Ultimately, Plaintiff cites a few decisions that did not address RPB's arguments at all, are clearly erroneous and rejected by numerous other decisions[13] holding that this law does not apply to websites. One of the basic errors these decisions make is starting from the false premise that the Legislature was legislating in a vacuum. In reality, the Legislature copied *verbatim* the definitions of "pen register" and "trap and trace device" directly from federal law. *See* 18 U.S.C. § 3127(3)(4). And it was also well established that these definitions **strictly related to telephone lines, and *not* the Internet**.[14] *See In re The Application of the United States of America for an Order Authorizing the use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (observing the potentially broad definitions, but holding "it appears from the construction of related sections of the statutes governing trap and trace devices that **they include only devices that are attached to a telephone line**.") ("emphasis added"). And it is a well-settled rule of statutory construction that the Legislature "must be considered to have adopted also the construction given by this Court to such language, and made it a part of the enactment." *Shapiro v. United States*, 335 U.S. 1, 16 (1948).

Thus, the decisions cited by Plaintiff "faulting" the Legislature for using "broad" language get the rules of statutory construction exactly backwards. The Court must assume here that the Legislature was aware of the *courts' narrow*

---

[13] *See* Mem. at 25; *see also Sanchez v. Cars.com Inc.*, Case No. 24STCV13201 at 4 (Cal.Super. Jan. 27, 2025) ("'pen register' and 'tra[p] and trace devices' refer to devices or process that are used to record or decode dialing, routing, addressing or signaling information **from telephone numbers, and not internet communications such as websites**.") (emphasis added).

[14] *See also Smith v. Maryland,* 442 U.S. 735, 736 n. 1 (1979) ("A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released."); *see also People v. Larkin*, 194 Cal. App. 3d 650, 653 n.2 (1987) (same);

interpretation of these *same* definitions being limited to telephone lines when they adopted this law with the same definitions. Indeed, no one could review the legislative history at issue and conclude otherwise – which is presumably why Plaintiff ignored it entirely. At bottom, this law has no application to the Internet.

Respectfully submitted,

Dated: March 25, 2025

**ARENTFOX SCHIFF LLP**

By:/s/ Lynn R. Fiorentino
Lynn R. Fiorentino
Susanne Boniadi
Attorneys for Defendant
Rad Power Bikes, Inc.